UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18 C 736 |
| | ) |
| ALAN CISNEROS, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Alan Cisneros filed this petition for relief from his sentence on narcotics distribution charges. He contends that the court erred in making its own finding, by a preponderance of the evidence, that he obstructed justice, and that trial counsel was ineffective for failing to make this argument and for failing to advise him of the consequences of his guilty plea. As explained here, none of these claims has merit, and Cisneros's request for relief from his conviction and sentence is denied.

## DISCUSSION

### 1. Background

Petitioner Alan Cisneros was a high-ranking member of the Latin Kings and a leader of its drug distribution operations. Over the course of several months in 2011 and 2012, Cisneros and others were involved in trafficking more than six kilograms of cocaine. Upon his arrest in May 2012, Cisneros waived his rights and acknowledged his involvement in drug trafficking. Agents warned him that he would be indicted on federal narcotics charges and invited him to cooperate, and Cisneros asked for time to consider his options. The following day, however, instead of responding to the agents' invitation, Cisneros headed for O'Hare International Airport, where he was apprehended just before takeoff with a one-way ticket to Mexico City, a Mexican passport, and a suitcase full of cash.

Cisneros later pleaded guilty in a plea declaration drafted by defense counsel. Then-Judge Der-Yeghiayan of this court calculated his Guideline sentence, imposing a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, and sentenced him to 188 months, the bottom of the guideline range. Cisneros challenged the obstruction-of-justice enhancement on appeal, arguing that his effort to flee did not genuinely burden the investigation or prosecution; he contended that he simply needed to clear his head and intended to return. The Seventh Circuit observed that the circumstances belied this assertion:

> Cisneros booked only a one-way ticket, thus negating his claim that he planned to return in short order. Furthermore, he fled in a manner that appeared to be designed to evade notice. Having been made aware that the agents had been monitoring his phone and his home as part of the investigation, Cisneros did not pack clothes from home, but merely purchased a few t-shirts on the way to the airport and attempted to depart quickly. Other than those t-shirts, he filled the suitcase with $2500 in cash, which would allow him to travel within Mexico without easily being traced. In addition, . . . Cisneros was an illegal alien in the United States, a fact . . . evidenced by his possession of a Mexican passport. Given that status, Cisneros would not even have had the right to return to the United States. Moreover, although any flight to another country may have the potential for significant interference with an investigation, . . . [b]y fleeing to Mexico as a Mexican national, Cisneros could have placed himself entirely outside the reach of the American authorities.

*United States v. Cisneros*, 846 F.3d 972, 976 (7th Cir. 2017). In short, Cisneros's flight, had it succeeded, would indeed have significantly burdened the investigation and prosecution of his crimes. *Id.* The Seventh Circuit affirmed Cisneros's sentence.

Cisneros now seeks relief pursuant to 28 U.S.C. § 2255, arguing that the district court violated his Fifth and Sixth Amendment rights by making a finding of obstruction on the basis of a preponderance-of-evidence standard. As Cisneros sees things, he should have been charged separately with obstruction, which would have required the government to prove the charge beyond a reasonable doubt. Cisneros argues, further, that counsel was ineffective for failing to make this due process argument and by failing to advise him of the potential consequences of his plea. As explained below, neither of these claims has traction.

## 2. Analysis

Relief under section 2255 is "reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 633–34 (1993)). Section 2255 requires the court to vacate, set aside, or correct a sentence only if the court finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  A section 2255 motion is not a mechanism for raising "(1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).  Section 2255 is "neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995).

### A. Guideline Enhancement

Cisneros's first argument—that his Fifth and Sixth Amendment were violated because the court made sentencing findings based on a simple preponderance of the evidence—was one he could have raised on direct appeal and is therefore barred by procedural default.  In any event, the argument is squarely defeated by Supreme Court and Seventh Circuit precedent. *See, e.g., United States v. Armenta*, 883 F.3d 1005, 1009 (7th Cir. 2018) (rejecting Fifth and Sixth Amendment challenge where "the district court found that [defendant] obstructed justice and increased her Guidelines range—but not her mandatory minimum or maximum sentence—accordingly."). The Supreme Court confirmed in *United States v. O'Brien*, 560 U.S. 218 (2010), that elements of the crime must be found by a jury based on evidence beyond a reasonable doubt; "[s]entencing factors, on the other hand, can be proved to a judge at sentencing by a

3

preponderance of the evidence." *Id.* at 224 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92 (1986)). *See also United States v. Watts,* 519 U.S. 148, 156–57 (1997) (per curiam) (facts relevant to sentencing may be proved by a preponderance of evidence); *United States v. Bozovich*, 782 F.3d 814, 818 (7th Cir. 2015) (judge findings on drug quantities under the guidelines do not violate due process); *United States v. Valdez*, 739 F.3d 1052, 1054 (7th Cir. 2014) (same). In sentencing Cisneros, Judge Der-Yeghiayan properly used the Guidelines, "an essential tool in creating a fair and uniform sentencing regime," as a source, acted within his discretion in making determinations about enhancements on the basis of the preponderance of the evidence, *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), and then imposed a sentence at the bottom of the guideline range. This procedure did not violate the Constitution. And because any challenge to this practice would have been rejected, Cisneros's attorney was not ineffective in failing to raise such a challenge.

### B. Alleged Ineffective Assistance in Plea Advice

Cisneros's remaining argument is another ineffective assistance claim: he alleges that his attorney failed to advise him that he could face any sentence greater than 108 months (the high end of the sentencing range as calculated in his plea declaration). That argument is defeated by the record. In his plea declaration ([317] in 12 CR 356), Petitioner specifically acknowledged that he understood the prosecutor and the Probation Officer would advise the court of the nature and circumstances of the charges and "all matters in aggravation . . . relevant to the issue of sentencing." (*Id.* at 7–8.) He acknowledged, further, that the guidelines are "advisory, not mandatory," that "the Court's determinations govern the final Sentencing Guidelines calculations," and that the court's sentencing decisions may result in a sentence "greater than" the applicable guideline range. (*Id.* at 4, 6, 8.) At the hearing at which Cisneros pleaded guilty, the parties specifically discussed their disagreements concerning guideline calculations. (6/23/15 Plea Colloquy Tr. [385], at 13–15.) The prosecutor noted that the government believed the drug quantity was higher than anticipated in Cisneros's plea declaration; that the government would

4

seek an enhancement for obstruction of justice; and that, if the court imposed such an enhancement, Cisneros would not be eligible for an "acceptance of responsibility" finding. (*Id.* at 14:16–25.) Judge Der-Yeghiayan explained to Cisneros that his lawyer "has figured your guidelines at a certain level right now," but "government figures it's at [a] different level." (*Id.* at 15:11–13.) The judge confirmed that he himself would later determine the appropriate sentence, and made clear that it was not pre-determined: "If you disagree with your sentence, if you don't like your sentence, you will still be bound by your plea of guilty . . . ." (*Id.* at 16:11–14.) Cisneros responded that he understood all of this. (*Id.* at 16:15–16.) Later in the proceeding, Judge Der-Yeghiayan reiterated that the parties "have disagreements which will become relevant for the purposes of sentencing." (*Id.* at 21:19–21.) And at the conclusion of the hearing, he specifically asked, "Mr. Cisneros, did you understand everything clearly?" to which Cisneros responded, "Yes, I do." (*Id.* at 26:24-27:3.)

In short, the language of the plea declaration prepared by Cisneros's trial counsel is inconsistent with the notion that counsel promised Cisneros his sentence would be no longer than 108 months. And even if counsel had made such a promise, the court corrected any misapprehension: Judge Der-Yeghiayan explained that he had not yet made guideline determinations, and that he might well impose a sentence that Cisneros did not expect. "It is well-established that a district court's explanation of the sentencing process to a defendant during the defendant's plea colloquy removes any possible prejudice of counsel's advice on the sentencing consequences." *Harrington v. United States*, No. 13 C 5458, 2014 WL 553227, at *5 (N.D. Ill. Feb. 12, 2014) (St. Eve, J.) (citing *Thompson v. United States*, 732 F.3d 826, 830–31 (7th Cir. 2013) (per curiam); *Wyatt v. United States*, 574 F.3d 455, 458–59 (7th Cir. 2009); *Bethel v. United States*, 458 F.3d 711, 718–20 (7th Cir. 2006)). Thus, any purported failure of Cisneros's attorney to advise him of the consequences of his plea did not prejudice him.

5

**CONCLUSION**

Counsel was not ineffective for failing to object to the court's imposition of an obstruction-of-justice enhancement, nor was Petitioner prejudiced by counsel's alleged failure to advise him that he faced the possibility of a sentence greater than the guideline sentence anticipated in his plea declaration. The section 2255 petition is denied. Because reasonable jurists could not "debate whether . . . the petition should have been resolved in a different manner," *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011), Cisneros has failed to make a "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c), and the court declines to issue a certificate of appealability. *Id.* Judgment will enter in favor of the United States.

ENTER:

Dated: August 21, 2018

_____
REBECCA R. PALLMEYER
United States District Judge